USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 22, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                :

ANTHONY FAZIO, SR.,                    :

                                                :              16-cv-8529 (KBF)
                              Petitioner,         :             11-cr-0873 (KBF)

                       -v-                         :

UNITED STATES OF AMERICA,       :             OPINION & ORDER

                              Respondent.    :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Anthony Fazio, Sr., currently incarcerated at F.C.I. Fort Dix, brings a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Fazio was sentenced on September 13, 2012 to 151 months of incarceration for racketeering conspiracy under 18 U.S.C. § 1962(d); racketeering under 18 U.S.C. § 1962(c); extortion conspiracy in violation of the Hobbs Act, 18 U.S.C. § 1951; receiving unlawful labor payments in violation of 29 U.S.C. § 186(b)(1) and (d)(2); conspiracy to commit money laundering in violation of the Hobbs Act, 18 U.S.C. § 1956(b); and witness tampering in violation of 18 U.S.C. § 1512(b). Broadly, Fazio asserts ineffective assistance of counsel at all stages of his case, as well as prosecutorial misconduct.

      For the reasons set forth below, the petition is DENIED.

I.     BACKGROUND

      In 2012, Anthony Fazio, Sr., ("Fazio" or "petitioner") was convicted of a number of crimes relating to misconduct as president of a labor union. As the facts

of this case are laid out extensively elsewhere, (see, e.g., Trial Tr. (ECF Nos. 125-30); Mem. of Law of the United States of America in Opp'n to Pet'r Anthony Fazio, Sr.'s Pet. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence (ECF No. 10), at 4-6), the Court provides only an overview of those aspects most relevant to this § 2255 petition.

With help from both his son, Anthony Fazio, Jr., and nephew, John Fazio, Jr., petitioner used his position as the leader of a union to extort payoffs and secure illegal kickbacks from union employers. (Trial Tr. at 44-45.) The defendants also participated in a money laundering scheme to hide these payments. (Id. at 45:4-7.) Additionally, petitioner alone was convicted of witness tampering for attempting to convince a witness, John Maloney, to lie to the federal grand jury investigating these illicit activities. (Id. at 45:7-10.)

Before trial, the Government offered all three defendants a global plea deal—each defendant could only plead guilty if all co-defendants pled guilty as well. (Id. at 2781:2-5.) Fazio wanted to accept the deal; John Fazio, Jr. did not. (Id.) Fazio then considered an open plea, but ultimately decided against it. (C. Winograd Decl. ¶ 4; J. Winograd Decl. ¶ 4.) As a result, the case went to trial; all three defendants were convicted.

Prior to the trial's commencement and arising out of a charge of obstruction of justice relating to witness tampering, the Court issued a Protective Order enjoining Fazio from contacting union members, employers, and contractors unless their counsel was/were present. (11-cr-0873 ECF No. 20 at 1; Nov. 2, 2011 Hearing

2

Tr. at 7:8-11.) Following issuance of the Order, when Fazio's attorney tried to contact witnesses through counsel, none agreed to speak. (Sercarz Decl. ¶ 15).

Over the course of the proceedings (including trial, sentencing, and appeal), Fazio had a number of lawyers. He first retained Gerald Lefcourt; Lefcourt was replaced early on by Maurice Sercarz. In January 2012, Joel Winograd ("J. Winograd") joined Fazio's defense team, and in March of that year, Sercarz withdrew. In April 2012, Corey Winograd ("C. Winograd") joined the team. The Winograds remained as trial counsel. Fazio retained Marc Fernich to assist with the sentencing proceeding. Co-defendant and nephew John Fazio, Jr. was represented throughout all stages of the proceedings by both Gerald McMahon and Mathew Mari.

II. LEGAL PRINCIPLES

Pro se litigants are "entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).[1] Nevertheless, a Court may dismiss a petition under § 2255 without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); see also Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears

---

[1] Fazio filed his § 2255 motion pro se, (ECF No. 1), but was counseled when he filed his Reply Brief, (ECF No. 14). The Court construes his motion and memorandum of law (ECF No. 2) as it would any pro se submission, and his reply as it would any counseled submission.

3

from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

Broadly, petitioner asserts that ineffective assistance of counsel resulted in a longer sentence than he would have otherwise received, and in the failure of his direct appeal. (See Movant's Fed. R. Gov. Section 2255 Rule 2(b) Mot. & Mem. of Fact and Law in Support of Mot. To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to Title 28 U.S.C. § 2255 ("ECF No. 2").) To prevail on an ineffective assistance claim, Fazio "must [first] show that counsel's representation fell below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, he must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. It is perhaps too basic to merit mentioning—but is an issue here—that in order to maintain a claim of ineffective assistance of counsel, the attorneys at issue must have represented the claimant. See, e.g., United States v. Pungitore, 910 F.2d 1084, 1143 (3d Cir. 1990) (holding that even if an attorney "figured prominently in formulating and presenting [a] unified defense, that does not mean that he enjoyed an attorney-client relationship" with each defendant); United States v. Merlino, 2 F. Supp. 2d 647, 658 (E.D. Pa. 1997) ("[T]he employment of a joint defense strategy does not establish an attorney-client relationship between

4

every defense attorney and every defendant in a case . . . ."); Smith v. State, 703 S.E.2d 629, 637 (Ga. 2010) (refusing to allow a claim for ineffective assistance of counsel based on a co-defendant's attorney).

III. DISCUSSION

Each of petitioner's claims fails under the first prong of Strickland: the record amply demonstrates that his counsel's conduct was within the range of reasonableness. Even if that were not the case, these claims would fail under the second prong of Strickland because petitioner has failed to demonstrate that any of his counsel's alleged failures resulted in prejudice. In addition, petitioner's ineffective assistance claims against Mari and McMahon fail as neither was his lawyer.

The Court addresses each stage in turn.

   a. Pre-Trial

Throughout his petition, Fazio repeatedly references the global plea deal offered by the Government as giving rise to claims of ineffective assistance of counsel. In this regard, petitioner challenges the actions of his own retained attorneys, Sercarz, J. Winograd, and C. Winograd, as well as the actions of counsel retained for his nephew and co-defendant, attorneys Mari and McMahon. (ECF No. 2 at 7-8.)

Rather than propose individual agreements with each defendant, the Government offered only a global deal. That is, only if all three defendants pled guilty would the Government agree to a deal. Fazio asserts that because of this all-

5

or-nothing arrangement, he could not plead guilty without both co-defendants doing the same. Thus, according to petitioner, the allegedly ineffective conduct of <u>John Fazio, Jr.'s</u> attorneys (who allegedly could not persuade John Fazio, Jr. to agree to the deal in a timely manner) prejudiced Fazio as well, giving him standing to assert a claim based on their conduct.

This Court need not examine the conduct of John Fazio, Jr.'s attorneys to adjudicate this claim. Petitioner cannot bring a claim of ineffective assistance based on the conduct of lawyers with whom he did not have an attorney-client relationship. A claim of ineffective assistance necessarily rests on the conduct of one's own attorneys—not the attorneys of others. The Court appreciates the particular circumstances presented by a global plea deal, but an ineffective assistance of counsel claim does not, even in such a situation, extend to all counsel representing any member of the group. If this Court were to adopt Fazio's theory, then whenever the Government offers a global plea deal, attorneys for all defendants to whom such a deal was extended would have a duty to all defendants, even if their interests diverge. This, of course, would raise a host of other issues. <u>See, e.g.</u>, <u>Curcio v. United States</u>, 680 F.2d 881, 888 (2d Cir. 1982) (noting the "dangers [posed to individual defendants] of representation by an attorney having divided loyalties"); <u>United States v. Cunningham</u>, 672 F.2d 1064, 1073 (2d Cir. 1982) (calling attention to a defendant's "right to an attorney of undivided loyalty").

In an effort to establish some form of direct attorney/client relationship, Fazio claims that he paid $50,000 to McMahon and $10,000 to Mari. But such payments

6

do not ipso facto establish an attorney/client relationship.  There is no other evidence in the record supporting that they were, in fact, retained as Fazio's counsel, and there is evidence to the contrary—in particular, that he made such payments as assistance to his nephew.  Petitioner has not submitted evidence that he sought or received legal advice from either lawyer; and both Mari and McMahon have submitted factually uncontested affidavits that deny the existence of an attorney-client relationship.  (Mari Decl. ¶ 3 ("I never represented Anthony Fazio, Sr. in any way."); McMahon Decl. ¶ 2 ("[A]t no time did I ever enter into or have an attorney-client relationship with Petitioner.").)  They both maintain that if any payments were made, they were for John Fazio, Jr.'s legal fees.  (Mari Decl. ¶ 9 ("I remember some conversation that Anthony Fazio, Sr. was going to help his nephew. . . . [N]othing was ever given to us to represent anyone but John Fazio.").)  An agreement to pay the legal fees of another does not on its own establish an attorney-client relationship between the payer and the attorney.  See Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P., 662 Fed. App'x 33, 35 n.1 (2d Cir. 2016).

Relatedly, Fazio claims that his own counsel should have advised him against "retaining Mari and McMahon," as the latter two attorneys also represented his co-defendant, John Fazio, Jr.  However, because Fazio did not, in fact, retain Mari and McMahon as his attorneys, there was no reason for Sercarz, J. Winograd, or C. Winograd to have provided such advice.

Fazio also references the global plea deal in support of an ineffective assistance claim based his own attorneys' "failure" to negotiate a deal that would

7

have been <u>acceptable to John Fazio, Jr.</u>  This argument is also without merit.  In essence, this is no more than an assertion that counsel was ineffective for failing to negotiate a better plea for another party—but Fazio neither offers evidence that the Government would have been willing to negotiate nor points to a specific action his counsel could have taken to secure a plea deal that <u>John Fazio, Jr.</u> would have accepted.  As such, petitioner fails to demonstrate that counsel's actions fell below an objectively reasonable standard.  And even if they had, petitioner fails to demonstrate prejudice: there is no evidence or support for an inference that John Fazio, Jr. might have accepted a different plea deal, or that petitioner's sentence would have been different had defendants entered into the global plea.

Petitioner next argues his attorneys were ineffective in failing to convince Mari to utilize his promised "connections" to the prosecutor to secure a more favorable plea.  But the record does not reflect that such a connection was promised or that it existed.  (Mari Decl. ¶ 6 ("I never made any representations to anyone about A.U.S.A. Kwok or make any positive comments about him.  I had no influence on Mr. Kwok.  He was a zealous adversary and nothing more to me."); McMahon Decl. ¶ 5 ("Nor did I hear Mr. Mari say that he had a special relationship with prosecutor Kwok, a claim which is ludicrous on its face." (internal citation omitted)).)

Finally, petitioner asserts a more traditional ineffective assistance claim based on the actions of his retained counsel, Sercarz, J. Winograd, and C. Winograd. He first challenges their alleged failure to explain the possibility of an "open plea" to

8

the indictment. However, the attorneys' affidavits assert they did discuss the benefits of an open plea with Fazio, and Fazio offers no contrary facts. (J. Winograd Decl. ¶ 4 (asserting that counsel did discuss an open plea with Fazio); C. Winograd Decl. ¶ 4 (same).) Seizing on his attorneys' declarations that Fazio was "unwilling to entertain an open plea because he was unwilling to risk a sentence without the benefit of a plea agreement . . . ," (C. Winograd Decl. ¶ 4; J. Winograd Decl. ¶ 4), Fazio's Reply argues that these statements demonstrate his attorneys offered "deficient advice" because a "reasonable counsel would have said more," (ECF No. 14 at 3).

While Fazio's Reply lays out a number of methods Fazio's counsel <u>could have</u> used to convince him to take the open plea, (<u>id.</u> at 3-6), <u>Strickland</u> does not require this much. In the Second Circuit, "reasonable professional conduct does not under all circumstances require a lawyer to give an explicit opinion as to whether a client should take a plea offer." <u>Purdy v. United States</u>, 208 F.3d 41, 48 (2d Cir. 2000). Ineffective counsel has been found at the plea stage if the lawyer "never [gives] his client any advice or suggestion as to how to deal with the [government's] offered plea bargain." <u>Boria v. Keane</u>, 99 F.3d 492, 498 (2d Cir. 1996), decision clarified on reh'g on other grounds, 90 F.3d 36 (2d Cir. 1996). But here, petitioner's counsel did offer advice, rising above the level of conduct in <u>Boria</u>. And to fall within the "wide range of reasonableness" for effective assistance, his lawyers did not need to use every tactic imaginable to convince him to plead "open." <u>Purdy</u>, 208 F.3d at 45. Indeed, the tactics suggested by petitioner's Reply Brief might have become

9

coercive, and a failure to respect the principle that a decision to plead guilty "must ultimately be left to the client's wishes." Boria, 99 F.3d at 497. And even if his counsel's actions had been unreasonable, petitioner has not demonstrated that their alleged inaction and failure to inform him about the benefits of a plea prejudiced him in any way—the Court noted at sentencing that it would have imposed the same sentence had he pled guilty. (Sen. Tr. at 66.)

In addition, petitioner asserts ineffective assistance with regard to a number of witness-related issues. He asserts that his counsel was ineffective for failing to interview certain witnesses; investigate alleged prosecutorial misconduct resulting in the Protective Order; and effectively combat the witness tampering charge. Petitioner contends that the "Government's motion for [a] protective order [covering the employer-witnesses] was nothing more than a sham to deny the defendants in this case fair judicial process." (ECF No. 2 at 15-16.) Due to this "sham" protective order, he says, his defense team was unable not only to interview witnesses for his defense generally, but also to interview John Maloney—the witness at the center of Fazio's witness tampering charge—specifically. He claims further that, had his counsel interviewed Maloney, they would have learned that Fazio "repeatedly urged Mr. Maloney to provide truthful information to the Government . . . ." (Id. at 17.) Thus, petitioner argues, he would have had an affirmative defense to the witness tampering charge. (Id. at 17-18.)

Out of this version of events come several claims. First, he asserts that his counsel was ineffective for failing to investigate the Government's "fraudulent"

10

request for a protective order; and that if his attorneys had investigated, they would have discovered that the witnesses did not make an "independent decision" to "become unavailable for defense interview and investigation." (Id. at 13.) There are, however, no facts to indicate that the protective order was a "sham" and Fazio alleges nothing to indicate his counsel should have suspected prosecutorial misconduct. Fazio's assertion that his counsel should have alerted the Court to the prosecution's "obstruction of justice" fails for the same reason—counsel cannot be held responsible for failing to alert the Court to a circumstance that did not exist.

Petitioner also claims his counsel was ineffective for "agree[ing] to the Government's demand not to interview Maloney" because Maloney would have provided exculpatory evidence for the witness tampering and money laundering charges, and demonstrated that the protective order "was in reality a Government sham." (Id. at 13-15.) This claim appears to rest on the fact that, at trial, "the witness made clear he would have no problem speaking with defense counsel." (Id. at 16.) While Maloney did say that he "probably would have" spoken with defense counsel had he been approached, (Trial Tr. at 847:2-7), this testimony in no way indicates that Fazio's attorneys' conduct was unreasonable, or that their failure to approach Maloney was prejudicial. In fact, as noted by the Government (ECF No. 10 at 19), Fazio's counsel's decision not to ask Maloney on the witness stand whether Fazio had told him to testify truthfully was likely a "strategically sound" decision, as it could have hurt Fazio's case more than helped it. (Id.) Nevertheless, Sercarz's uncontroverted declaration states that he did "attempt[] to interview each

11

of the alleged victims by contacting his attorney," but "in each instance, the request was denied." (Sercarz Decl. ¶ 15.)[2]

As none of petitioner's claims of ineffective assistance at the pre-trial stage survive Strickland's "highly demanding" standard, see Kimmelman v. Morrison, 477 U.S. 365, 382 (1986), they cannot support his § 2255 motion.

    b. Sentencing

Petitioner also takes issue with a number of aspects of his counsel's conduct at the sentencing stage. The Court addresses each allegation in turn.

Petitioner first attacks his counsel's failure to object to the Court's statement that it "would have imposed the same sentence" if Fazio pled guilty. Any failure to object was of no moment because there had in fact been a trial.

Second, petitioner challenges his counsel's failure to object to the Court's Guideline calculation. But the Court's calculation was not inaccurate—the two-point enhancement for the obstruction of justice charge was lawfully applied, see

---

[2] Also referencing the Protective Order, Fazio alleges prosecutorial misconduct to support his § 2255 petition; he claims the Government interfered with his counsel's ability to put on a strong defense by prohibiting contact with witnesses. The scope of review for allegations of prosecutorial misconduct in the habeas context is "quite limited." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). To obtain relief, petitioner must demonstrate that he suffered actual prejudice that determined the outcome of his trial. Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). Aside from referring to the Government's "incredible presentation" that eleven witnesses had "simultaneously, independently, and voluntarily made the decision to make themselves completely unavailable to defense counsel contact and investigation," Fazio does not allege facts that indicate prosecutorial misconduct. (ECF No. 2 at 15.) There is no indication in the record that the Government suggested that the employer-witnesses simultaneously and independently decided not to speak to Fazio; rather, this result arose from the Protective Order and then the independent decisions of the witnesses' attorneys. And even if this were not the case, this claim is procedurally barred. Fazio did not raise this claim on appeal, and at no point in his briefing (ECF Nos. 2, 14) does he attempt to show cause or prejudice—or factual innocence—to avoid the procedural bar. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989); Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). For this reason as well, then, Fazio's claim of prosecutorial misconduct cannot suffice to warrant the Court granting his § 2255 petition.

United States v. Provenzano, 1 Fed. App'x 43, 45 (2d Cir. 2001); see also United States v. Bell, 183 F.3d 746, 750 (8th Cir. 1999), and Fazio's counsel did object to the loss enhancement. The Court held that it adopted a "reasonable estimate," as suggested by the Guidelines. (Sen. Tr. at 20:8-13, 21:1-8.) As such, Fazio's attorneys' decision was not improper.

Petitioner also points to his counsel's failure to present sentencing statistics to the Court in "support of a below-Guideline prison term." (ECF No. 14 at 6.) But attorneys have a wide range of available strategies when arguing at sentencing—presenting statistics is not required. If the Court were to accept this argument, then failure to present statistics in support of a sentence could always result in ineffective assistance of counsel. This is not the law.

Petitioner's next claim is that his attorneys were ineffective for failing to request a Fatico hearing or object to the Court's characterization of his lifestyle as "lavish." (ECF No. 2 at 24-25.) This argument is also without merit. In fact, the Court mentioned only that Fazio was "able to avail himself" of a "lavish lifestyle," explaining that the Court did not know "whether or not he did or not . . . ." (Sen. Tr. at 10:23-25.) Failure to object to this statement was not unreasonable, in light of a jury verdict involving large sums of illegal payments.

Petitioner next takes issue with his counsel's failure to request a jury determination as to the forfeiture amount. He argues that he has a right to a jury trial on this issue, and that his lawyers "rendered constitutionally deficient performance in not ensuring Movant's right to jury determination was protected."

13

(ECF No. 2 at 26.) See also Fed. R. Crim. P. 32.2(b)(5). But Fazio had a trial, and the Court ordered forfeiture and restitution amounts which were proportional to the offenses for which Fazio was convicted and based on evidence adduced at trial. See United States v. Bajakajian, 524 U.S. 321, 334 (1998) ("The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."); see also United States v. Viloski, 814 F.3d 104, 114 (2d Cir. 2016) (rejecting an Eighth Amendment challenge to a forfeiture); United States v. George, 779 F.3d 113, 124 (2d Cir. 2015) (same).

In light of the foregoing analysis, petitioner's claims of ineffective assistance at the sentencing stage fail.

    c. Appeal

Petitioner also challenges his lawyers' representation at the appeal stage. He is correct that appellate counsel's performance is required to "meet prevailing professional norms," (ECF No. 2 at 30 (citing Smith v. Murray, 477 U.S. 527, 535-36 (1986)), but he does not sufficiently demonstrate that his counsel did not meet this standard. Fazio's lawyers raised four issues on appeal; he claims that they chose weak arguments over "deadbang winning arguments." (Id.) The only arguments Fazio specifically points to, though, are that (1) his lawyer should have argued that the Court inaccurately calculated the Guideline sentence, and (2) the forfeiture order was "unconstitutional and punitively excessive." (Id. at 31.) Fazio's attorneys did challenge the reasonableness of the sentence on appeal, and it was not unreasonable that they did not challenge the forfeiture order. Because the Second

14

Circuit found that the District Court's loss calculation was not erroneous, no prejudice resulted from the attorneys' decision not to challenge the forfeiture order. His counsel had no "constitutional duty to raise every nonfrivolous issue"—let alone frivolous issues. Jones v. Barnes, 463 U.S. 745, 746 (1983).

Petitioner further argues that his counsel failed to "scour the record and unearth deadbang winners," (ECF No. 2 at 32), but provides no reason to believe these winning arguments existed, or that raising them would have led to a different result at the appeals stage. As such, none of Fazio's claims of ineffective assistance of counsel are sufficient under the Strickland standard to support his § 2255 motion.

IV. CONCLUSION

For the reasons set forth above, petitioner's § 2255 motion to vacate, set aside or correct his sentence is DENIED. The Court declines to issue a certificate of appealability, as Fazio has not made a substantial showing of a denial of a federal right. See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is directed to terminate Fazio's petition at 16-cv-8529 ECF No. 1 and 11-cr-0873 ECF No. 278 and to terminate 16-cv-8529.

SO ORDERED.

Dated: New York, New York
September 22, 2017

_____
KATHERINE B. FORREST
United States District Judge